# EXHIBIT A

IN THE COURT OF COMMON PLEAS
STARK COUNTY, OHIO

| | | |
|---|---|---|
| CALVIN CORNETT<br>6290 Winterberry Crossing<br>Oakwood Village, OH 44146 | ) ) ) ) | 2021CV00468 |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Hartnett |
| MARATHON PETROLEUM<br>LOGISTICS SERVICES LLC<br>24308 Gambrinus Avenue SW<br>Canton, OH 44706 | ) ) ) ) ) | COMPLAINT FOR RACE DISCRIMINATION, DISABILITY DISCRIMINATION, HOSTILE WORK ENVIRONMENT, RETALIATION, FMLA INTERFERENCE, FMLA |
| DAVID HENDRIX<br>24308 Gambrinus Avenue SW<br>Canton, OH 44706 | ) ) ) ) | RETALIATION, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, ASSAULT, NEGLIGENT TRAINING, RETENTION & |
| DOMINIQUE FENNELL<br>24308 Gambrinus Avenue SW<br>Canton, OH 44706 | ) ) ) ) | SUPERVISION, AIDING & ABETTING, FAILURE TO PRODUCE REQUESTED RECORDS |
| ROBYN ROHRBACHER<br>24308 Gambrinus Avenue SW<br>Canton, OH 44706 | ) ) ) ) | **JURY DEMAND ENDORSED HEREON** |

Plaintiff Calvin Cornett ("Plaintiff") alleges as follows for his Complaint against Defendants Marathon Petroleum Logistics Services LLC ("Marathon"), David Hendrix ("Hendrix"), Dominique Fennell ("Fennell"), and Robyn Rohrbacher ("Rohrbacher") (collectively "Defendants"):

1. Plaintiff worked for Defendants in Stark County, Ohio.

2. Marathon is a foreign limited liability company, doing business in Stark County, Ohio.

3. Marathon employed David Hendrix ("Hendrix") as Operations Analyst.

4. Hendrix supervised Plaintiff.

5. Marathon employed Dominique Fennell ("Fennell") as Human Resources Consultant.

6. Marathon employed Robyn Rohrbacher ("Rohrbacher") as Occupational Health Nurse.

7. Defendants were an employer of Plaintiff.

8. Defendants employed Plaintiff as a Transport Driver from October 13, 2013 until November 21, 2020.

9. The essential functions of Plaintiff's job as a Transport Driver included, but was not limited to, driving a truck filled with hazardous materials.

10. Plaintiff was qualified for his job.

11. Plaintiff is African-American.

12. Rohrbacher, Fennell, and Hendrix are Caucasian.

13. Plaintiff was the only African-American Transport Driver in Defendant's Canton, Ohio facility.

14. In May 2019, Plaintiff complained about the lack of racial diversity for African-Americans in the Canton, Ohio facility.

15. Beginning in August 2020, Hendrix routinely harassed Plaintiff by admonishing him with "commands" used for a slave or a dog. For example, Hendrix would command Plaintiff to "come here" and "sit down" in a loud and condescending tone that dehumanized Plaintiff.

16. Plaintiff complained to Hendrix to stop the harassment, but Hendrix persisted.

2

17. Upon information and belief, Hendrix intended to emulate an Antebellum era master-slave relationship with Plaintiff by commanding him like a slave or a dog, and to cause Plaintiff severe emotional distress.

18. Before working at Marathon, Hendrix was a police officer with hand-to-hand combat training. Hendrix used Plaintiff's knowledge of Hendrix's background as a police officer to terrorize Plaintiff and exert Hendrix's will over Plaintiff.

19. During one incident of Hendrix "commanding" Plaintiff like a slave or a dog on October 21, 2020, Plaintiff exclaimed, "Stop talking to me like your dog — like you own me!" In response, Hendrix aggressively approached Plaintiff with the intent to put Plaintiff in apprehension of immediate harmful or offensive contact. Plaintiff fled for safety to his car.

20. Hendrix's assault and merciless harassment of Plaintiff because of his African-American race had the effect of actually causing Plaintiff to suffer severe emotional distress by triggering Plaintiff's anxiety and post-traumatic stress disorder.

21. Hendrix assaulting Plaintiff and commanding him like a slave or a dog was extreme and outrageous conduct that went beyond all possible bounds of decency and was utterly intolerable in a civilized society.

22. On October 21, 2020 at approximately 5:00pm, Plaintiff called Fennell on the phone to complain about Hendrix harassing Plaintiff because of his African-American race, assaulting Plaintiff at work, and triggering Plaintiff's disabilities.

23. Fennell did not take immediate or adequate corrective action in response to Plaintiff's complaints.

24. Fennell did not do anything to counsel, reprimand, or discipline Hendrix in response to Plaintiff's complaints.

25. Plaintiff became mentally disabled by anxiety and post-traumatic stress disorder during his employment with Defendant.

26. Plaintiff's impairments substantially limited one or more of his major life activities.

27. Defendant was aware of Plaintiff's disabilities.

28. Plaintiff has a record of impairments.

29. Defendant regarded Plaintiff as having impairments.

30. Plaintiff could perform the essential functions of his job as a Transport Driver with a reasonable accommodation for his disabilities.

31. On or about October 22, 2020, Plaintiff applied for medical leave under the Family Medical Leave Act ("FMLA").

32. On or about October 22, 2020, Plaintiff submitted a note from Dr. Kamal Khalifi ("Dr. Khalifi") to Rohrbacher, requesting a leave of absence ("LOA") from October 22, 2020 through November 15, 2020 while Plaintiff waited for approval of FMLA leave to cover this period of time.

33. During Plaintiff's LOA, Dr. Khalifi prescribed thirty days of Xanax medication to Plaintiff.

34. Side effects of Xanax can include, but are not limited to, drowsiness, dizziness, insomnia, difficulty concentrating, nausea, and blurred vision.

35. Plaintiff's prescription of thirty days of Xanax eclipsed Dr. Khalafi's projected November 16th return to work date.

36. Plaintiff reasonably believed that driving a truck filled with hazardous materials on busy roads for Defendant while Plaintiff was suffering from the side effects of Xanax would put himself and others in danger.

37. On November 16, 2020, Plaintiff called Rohrabacher on the phone. During this call, Plaintiff expressed his belief that driving a truck filled with hazardous materials before the end of his Xanax prescription was dangerous. Plaintiff then requested as a reasonable accommodation for his disabilities to extend both his LOA and FMLA leave until he reached the thirty day limit of his Xanax prescription.

38. Rohrabacher denied Plaintiff's reasonable accommodation request, failed to offer Plaintiff any other accommodation, and insisted that Plaintiff must operate a truck filled with hazardous materials while drowsy, dizzy, sleep deprived, unable to concentrate, sick from nausea, and unable to see from blurred vision.

39. That same day, on November 16, 2020, Hendrix punished Plaintiff as a "no call no show" for requesting that day off work.

40. From November 17, 2020 through November 21, 2020, Plaintiff spoke on the phone with Fennell each day. During each of these calls, Plaintiff explained to Fennell how Xanax can impair his ability to drive a truck, and asked Fennell to extend Plaintiff's LOA and FMLA leave until he had reached the thirty day limit of his Xanax prescription.

41. Fennell repeatedly denied Plaintiff's reasonable accommodation request, failed to offer Plaintiff any other accommodation, and insisted that Plaintiff must operate a

truck filled with hazardous materials while drowsy, dizzy, sleep deprived, unable to concentrate, sick from nausea, and unable to see from blurred vision.

42. Rohrabacher and Fennell pressured Plaintiff to resign by requiring him to endanger himself and the safety of others by driving a truck filled with hazardous materials while impaired by Xanax.

43. Rohrabacher and Fennell requiring Plaintiff to endanger himself and the safety of others by driving a truck filled with hazardous materials while impaired by Xanax was extreme and outrageous conduct that went beyond all possible bounds of decency and was utterly intolerable in a civilized society.

44. On November 21, 2020, Plaintiff wrote to Defendants, verbatim, "Effective Immediately November, 21st 2020 I'll be Involuntarily resigning from Marathon Petroleum due to Stress and Hostile work environment In order for me to focus on Self Care and my Mental Health."

45. Defendants constructively discharged Plaintiff on November 21, 2020.

46. No reasonable persons of ordinary sensibilities in Plaintiff's position would have continued working at Marathon, knowing they would be assaulted by their supervisor, commanded like a slave and a dog, and forced to endanger themselves and the safety of others while driving impaired by Xanax.

47. On November 23, 2020, Plaintiff was approved for medical leave under the FMLA covering a period of October 25, 2020 through November 15, 2020.

48. Plaintiff had nine weeks of medical leave available to him under the FMLA at the time Defendants constructively discharged Plaintiff.

6

49. This Court has subject matter and personal jurisdiction over the claims raised in this Complaint.

50. Venue is proper in Stark County, Ohio.

51. Plaintiff has suffered damages in excess of $25,000.

52. Plaintiff has hired the undersigned counsel and has agreed to pay them reasonable attorney's fees and costs if they are successful on the claim set forth herein.

## COUNT I
## RACE DISCRIMINATION/HOSTILE WORK ENVIRONMENT

53. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 52 above.

54. In violation of Ohio Revised Code Sections 4112.02 and 4112.99, Defendants discriminated against Plaintiff because of his African-American race by subjecting Plaintiff to a racially hostile work environment and constructively discharging him.

55. Plaintiff is a member of a protected class.

56. Plaintiff was qualified for his job.

57. Plaintiff suffered adverse employment actions when Defendants subjected Plaintiff to a racially hostile work environment and constructively discharged him.

58. Defendants created a racially hostile work environment by engaging in severe and pervasive conduct that altered the terms conditions of Plaintiff's employment.

59. Plaintiff has been damaged by Defendants' race discrimination and racially hostile work environment.

60. Defendants' conduct is the cause of Plaintiff's damages.

61. Defendants acted with actual malice, entitling Plaintiff to punitive damages and his attorney's fees and costs.

## COUNT II
### DISABILITY DISCRIMINATION/HOSTILE WORK ENVIRONMENT

62. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 61 above.

63. In violation of Ohio Revised Code Sections 4112.02 and 4112.99, Defendants discriminated against Plaintiff because of his disabilities, because of his record of being disabled, or because of perceived disabilities.

64. Plaintiff was qualified for his job.

65. Defendants discriminated against Plaintiff because of his disabilities.

66. Plaintiff was subjected to a hostile work environment by Defendant.

67. Plaintiff suffered an adverse employment action when Defendants refused to reasonably accommodate Plaintiff's request to extend his LOA to cover his prescription of thirty days of Xanax, and when Defendants constructively discharged Plaintiff because of his disabilities, because of his record of being disabled, and because Defendants regarded Plaintiff as disabled.

68. Plaintiff has been damaged by Defendants' disability discrimination.

69. Defendants' conduct is the cause of Plaintiff's damages.

70. Defendants acted with actual malice, entitling Plaintiff to punitive damages and his attorney's fees and costs.

## COUNT III
### RETALIATION

71. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 70 above.

72. Plaintiff brings this action under Ohio Revised Code Sections 4112.02(I) and 4112.99.

73. Plaintiff orally opposed and complained about Defendants' unlawful employment practices.

74. Plaintiff had a reasonable belief that Defendants were engaging in unlawful employment practices.

75. Defendants retaliated against Plaintiff when Hendrix harassed Plaintiff by commanding him like a slave and a dog, when Hendrix assaulted Plaintiff, when Rohrbacher and Fennell refused to reasonably accommodate Plaintiff's disabilities, when Rohrbacher and Fennell insisted that Plaintiff should endanger himself and others by driving a truck with hazardous materials while impaired by Xanax, and when Rohrbacher and Fennell pressured Plaintiff to resign.

76. Plaintiff's opposition and complaints about Defendants' unlawful employment practices caused Plaintiff to be constructively discharged.

77. Defendants had no legitimate business justification for constructively discharging Plaintiff.

78. Plaintiff has been damaged by Defendants' retaliation.

79. Defendants' conduct is the cause of Plaintiff's damages.

80. Defendants acted with actual malice, entitling Plaintiff to punitive damages and his attorney's fees and costs.

## COUNT IV
## FMLA INTERFERENCE

81. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 80 above.

82. In violation of the Family Medical Leave Act of 1993, 29 U.S.C. Section 2601, *et seq.*, Defendants interfered with Plaintiff's medical leave when Defendants refused to extend Plaintiff's FMLA leave to cover his prescription of thirty days of Xanax.

83. Plaintiff told Defendants that he intended to take FMLA leave.

84. Plaintiff was denied the benefits of medical leave under the FMLA when Defendants refused to extend Plaintiff's FMLA leave to cover his prescription of thirty days of Xanax.

85. Plaintiff has been damaged by Defendants' interference.

86. Defendants' conduct is the cause of Plaintiff's damages.

87. Defendants acted willfully in violating the FMLA.

88. Plaintiff is entitled to liquidated damages and his attorney's fees and costs pursuant to the FMLA.

## COUNT V
## FMLA RETALIATION

89. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 88 above.

90. In violation of the Family Medical Leave Act of 1993, 29 U.S.C. Section 2601, *et seq.*, Defendants retaliated against Plaintiff by constructively discharging him because he took medical leave.

91. Plaintiff was engaged in FMLA protected activity by taking medical leave.

10

92. Defendants knew that Plaintiff was exercising FMLA rights by taking medical leave.

93. Plaintiff suffered an adverse employment action by being constructively discharged by Defendants.

94. There is a causal connection between Plaintiff's FMLA protected activity and constructive discharge.

95. Plaintiff has been damaged by Defendants' retaliation.

96. Defendants' conduct is the cause of Plaintiff's damages.

97. Defendants acted willfully in violating the FMLA.

98. Plaintiff is entitled to liquidated damages and his attorney's fees and costs pursuant to the FMLA.

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

99. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 98 above.

100. Hendrix, Rorhrabacher, and Fennell intentionally or recklessly acted in an extreme and outrageous manner towards Plaintiff.

101. Hendrix, Rorhrabacher, and Fennell's actions caused Plaintiff to suffer severe emotional distress as well as mental injury.

102. Plaintiff has been damaged by Hendrix, Rorhrabacher, and Fennell's infliction of emotional distress.

103. Hendrix, Rorhrabacher, and Fennell acted with actual malice, entitling Plaintiff to punitive damages and his attorney's fees and costs.

## COUNT VII
## ASSAULT

104. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 103 above.

105. Hendrix intended to put Plaintiff in apprehension of immediate harmful or offensive contact by aggressively approaching Plaintiff to cause him physical harm through the use of Hendrix's hand-to-hand combat training as a former police officer.

106. Plaintiff was aware of Hendrix's intention to put Plaintiff in apprehension of immediate harmful or offensive contact, and Plaintiff was put in apprehension of immediate harmful or offensive contact.

107. Plaintiff has been damaged by Hendrix's assault.

108. Hendrix's assault is the cause of Plaintiff's damages.

109. Hendrix acted with actual malice, entitling Plaintiff to punitive damages and his attorney's fees and costs.

## COUNT VIII
## NEGLIGENT TRAINING, RETENTION & SUPERVISION

110. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 109 above.

111. Marathon had a duty to use due care in training, retaining, and supervising Hendrix, Rorhrabacher, and Fennell.

112. Marathon breached its duty to use due care in training, retaining, and supervising Hendrix, Rorhrabacher, and Fennell.

113. Plaintiff has been damaged by Marathon's failure to use due care.

114. Marathon's conduct is the cause of Plaintiff's damages.

## COUNT IX
## AIDING AND ABETTING

115. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 114 above.

116. Plaintiff brings this action under Ohio Revised Code Sections 4112.02(J) and 4112.99.

117. Defendants have aided in discriminating against Plaintiff because of his African-American race and disabilities, and in creating a hostile work environment for Plaintiff.

118. Defendants have abetted in discriminating against Plaintiff because of his African-American race and disabilities, and in creating a hostile work environment for Plaintiff.

119. Plaintiff has been damaged by Defendants' aiding or abetting.

120. Defendants' conduct is the cause of Plaintiff's damages.

121. Defendants acted with actual malice, entitling Plaintiff to punitive damages and his attorney's fees and costs.

## COUNT X
## FAILURE TO PRODUCE REQUESTED RECORDS

122. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 121 above.

123. On or about December 19, 2020, a person acting on behalf of Plaintiff sent a request to Defendants for documents and records required to be kept and produced pursuant to Ohio Revised Code Section 4111.14(F)-(G).

124. Defendants acknowledged receipt of Plaintiff's request for documents and records regarding Plaintiff that are required to be kept and produced pursuant to Ohio

13

Revised Code Section 4111.14(F)-(G) when Defendants' in-house counsel, Casey J.T. McCoy, emailed Plaintiff's counsel on December 30, 2020: "Please be advised that [Marathon] is in the process of reviewing your letter and investigating [Plaintiff's] allegations. I will respond after I have investigated further."

125. Defendants did not produce any documents or records in response to the request.

126. Plaintiff may bring this action pursuant to Ohio Revised Code Section 4111.14(K).

127. Defendants are liable for the costs and reasonable attorney's fees of Plaintiff, and should be required by this Court to provide to Plaintiff the requested records.

WHEREFORE, Plaintiff demands judgment against Defendants for his lost wages, reinstatement or front pay, lost fringe benefits, liquidated damages, non-economic damages such as emotional pain, suffering, inconvenience, physical anguish, and loss of enjoyment of life, any other compensatory damages, punitive damages, prejudgment interest at the statutory rate, post-judgment interest, attorney's fees and costs, an Order requiring Defendants to produce the requested records, and all other relief to which he is entitled.

JURY TRIAL DEMANDED.

Respectfully submitted,

*/s/ Brad Levine*
Stephan I. Voudris, Esq.
Supreme Court No. 0055795
Brad Levine, Esq.
Supreme Court No. 0090286
Voudris Law LLC
8401 Chagrin Road, Suite 8
Chagrin Falls, OH 44023
svoudris@voudrislaw.com
blevine@voudrislaw.com
440-543-0670
440-543-0721 (fax)
*Counsel for Plaintiff*